UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUIS VUITTON MALLETIER, S.A., a French Société Anonyme,<br><br>Plaintiff,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, a California corporation,<br><br>Defendant. | Civ. Action No. 10-cv-1611 (PKC)<br><br>"ECF Case" |

## COMPLAINT AND JURY DEMAND

Plaintiff Louis Vuitton Malletier, S.A. ("**Louis Vuitton**"), by and through its attorneys, for its complaint alleging violation of the Lanham Act and New York statutory and common law against Defendant Hyundai Motor America ("**Hyundai**"), alleges and states as follows:

### NATURE OF THE DISPUTE

1. These claims arise out of Hyundai's knowing, intentional and unlawful dilution and infringement of Louis Vuitton's famous trademarks, alone and in combination.

2. Louis Vuitton brings this suit against Hyundai for federal and state trademark dilution, statutory and common law unfair competition, and federal trademark infringement. Louis Vuitton seeks to permanently restrain and enjoin Hyundai from marketing and distributing commercials and other advertising that infringe upon Louis Vuitton's registered and common law trademarks. Louis Vuitton also seeks monetary damages resulting from Hyundai's misuse of Louis Vuitton's trademarks, as well as

conduct.

## PARTIES

3. Plaintiff, Louis Vuitton Malletier, S.A., is a French Société Anonyme with its principal place of business located at 2 Rue du Pont Neuf 75001, Paris, France.

4. On information and belief, Defendant Hyundai Motor America is a corporation organized and existing under the laws of the state of California, with its principal place of business located in Fountain Valley, California. Hyundai has been and is doing business in this District, advertising, promoting and selling automobiles.

## JURISDICTION

5. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 with respect to the claims arising out of federal law. Jurisdiction is also proper pursuant to 28 U.S.C. § 1338 with respect to the claims arising under the federal trademark laws. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to the claims arising under state law, which are so related to the federal claims brought herein as to form part of the same case or controversy.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the acts giving rise to the claims occurred in this jurisdiction.

## FACTUAL BACKGROUND

A. **Louis Vuitton And The Worldwide Recognition Of The LVM Marks.**

7. Founded in Paris in 1854, Louis Vuitton is one of the premier luxury fashion houses in the world. Originally the creator of custom-made luggage and trunks, today Louis Vuitton is well-known for its high-quality handbags, purses,

trunks, wallets and other fashion accessories. Louis Vuitton is engaged in the business of designing, manufacturing and marketing a variety of luxury products that it sells throughout the United States in company owned and operated boutiques and high-end retail stores such as Neiman Marcus and Saks Fifth Avenue.

8. Louis Vuitton's principal trademark, the highly-distinctive and famous Toile Monogram, dates from the 1890's. It comprises a repeating diagonal pattern of interlocking company initials and geometrical shapes, displayed on a chestnut-brown background. Registered in 1932 on the Principal Register of the United States Patent and Trademark Office, this trademark is famous and incontestable. Similarly, its equally recognizable "LV" company initials mark—and also an integral part of the Toile Monogram—has been used since the 1890's to identify Louis Vuitton. These marks, along with the other source-identifying elements comprising the Toile Monogram such as the Flowers marks (collectively, the **"LVM Marks"**), appear below:



9. For more than a century, Louis Vuitton has continuously used its LVM Marks in connection with a wide variety of high-quality products, including, but not limited to, luggage, handbags, shoulder bags, tote bags, briefcases, business-type portfolios and other accessories.

10. Louis Vuitton is the owner of a number of United States trademark registrations for the LVM Marks for a wide variety of goods, copies of which are attached hereto as **Exhibit A**. These registrations include Nos. 297,594; 1,770,131; 2,399,161; 2,181,753; 2,177,828; 2,773,107; 2,361,695; 2,291,907; 1,938,808; 1,794,905 and 1,519,828.

11. Louis Vuitton's registrations set forth above are in full force and effect, and all have become incontestable.

12. LVM Marks are strong and unique, inherently distinctive and protectable without proof of secondary meaning.

13. Louis Vuitton has invested millions of dollars and decades of time and effort to create consumer recognition of the LVM Marks, and to ensure that the public, not only in the United States but throughout the world, associates the LVM Marks with high quality, luxury goods emanating exclusively from Louis Vuitton.

14. As a result of the wide renown acquired by the LVM Marks, Louis Vuitton's worldwide reputation for high quality and luxury goods, and the wide geographic distribution and extensive sale of various products distributed under the LVM Marks, the LVM Marks have acquired secondary meaning, fame and significance in the minds of the purchasing public. The purchasing public immediately identifies the products offered under the LVM Marks with a single source. Therefore, the LVM Marks, and the good will associated therewith, are of inestimable value to Louis Vuitton.

15. As a result, not only are the LVM Marks strong marks, but they have become famous as several courts have found.

B. **Hyundai's Knowing, Intentional And Unlawful Use Of The LVM Marks.**

16. Hyundai is in the business of manufacturing and selling automobiles worldwide, including in the United States.

17. Like all car manufacturers, Hyundai, as part of its business, promotes and advertises its automobiles through commercials that air across the country on network television.

18. Each year, many companies including Hyundai broadcast their most creative, witty and extravagant commercials during the Super Bowl, the championship game of the National Football League. With a built-in audience of, on average, over 80 million viewers, businesses pay millions of dollars to maximize the exposure of their commercials during this eagerly-anticipated annual televised ritual.

19. On February 7, 2010 a record 106 million people tuned in to watch the New Orleans Saints defeat the Indianapolis Colts in Super Bowl XLIV.

20. Determined to take advantage of this captive audience, on February 7, Hyundai aired "Luxury," one of its nine Super Bowl commercials for 2010. In one scene, "Luxury" (the **"Offending Commercial"**) features a group of men playing basketball with a dark brown-tinted ball covered in a deliberately-arranged pattern of contrasting light brown "LZ" initials together with "X and O" geometric elements, all colorable imitations of the LV, Toile Monogram, and Flowers trademarks owned and registered by Louis Vuitton.

21. The theme of the Offending Commercial is to correlate luxury and value to sell the Hyundai SONATA-brand automobile. Throughout its "Luxury" commercial, Hyundai presents a series of vignettes featuring images of ordinary life juxtaposed with

less-than-subtle symbols of luxury. These include, in sequence: (a) an oversized yacht parked between two homes; (b) basketball players using a designer-branded ball; (c) police officers eating caviar in their patrol car; (d) a cafeteria banquet serving lobster and lamb; and (e) chandeliers replacing street lights as the Hyundai Sonata drives by. Still images from the Offending Commercial are attached hereto as **Exhibit B**. The commercial appears in its entirety at http://www.hyundaisuperbowl.com/hyundai-super-bowl-commercials/2010/luxury/. A screenshot from Hyundai's website showing the Offending Commercial is attached hereto as **Exhibit C**.

22. Hyundai's pattern on the basketball in the Offending Commercial uses the same brown on brown color scheme as the classic Toile Monogram. It also features the stylized imitation "LZ" initials arranged to mimic the Toile Monogram pattern with "X and O" elements highly similar to the pinwheel shape and clover-like shape with an inset design that are the Flowers marks and also form a part of the Toile Monogram.

23. Imitations of the LVM Marks are the only trademarks, other than Hyundai's own trademarks, appearing in the commercial. Having assembled four other scenes with non-branded symbols of luxury, Hyundai is able to convey its intended message without mimicking the LVM Marks.

24. Louis Vuitton has not authorized Hyundai to use the LVM Marks, or any variations thereof, as part of the Offending Commercial, in any other advertising or promotion, or in connection with any of the products or services Hyundai may manufacture, sell or otherwise provide.

25. Hyundai's use of the replica "LZ" initials and "X and O" geometric elements in a monogram pattern covering its basketball in its Offending Commercial is

calculated to exploit and commercially benefit from the connection in the mind of the consumer of and to benefit commercially from the fame and renown of the LVM Marks by creating a false association between Louis Vuitton and its automobiles. Hyundai intended the overall commercial impression of its replica monogram pattern on the basketball in the Offending Commercial to be the same as that of the LVM Marks.

26. Hyundai was on notice of the LVM Marks and was well aware of Louis Vuitton's worldwide fame and renown before it created the Offending Commercial. The exterior design of the basketball featured in the Offending Commercial is a spurious replica of the Toile Monogram design used by Louis Vuitton on its handbags, trunks, purses and other distinctive and successful accessories. Hyundai has adopted and used replicas of the LV and Toile Monogram trademarks intentionally to commercially benefit from the fame and renown of Louis Vuitton and the LVM Marks by creating a false association between Louis Vuitton and the Offending Commercial. As a result, Hyundai is unlawfully exploiting and benefiting from the recognition and good will of the LVM Marks, is willfully diluting and tarnishing the distinctiveness of the LVM Marks, and intentionally creating confusion in the marketplace regarding the association, affiliation or sponsorship of Hyundai's products with Louis Vuitton.

C. **Louis Vuitton Is, And Continues To Be, Damaged By Hyundai's Conduct.**

27. The good will that Louis Vuitton has built up in its LVM Marks through years of substantial investment and effort is put at risk as a result of Hyundai's imitation of these registered trademarks. Hyundai's conduct is likely to both dilute the distinctiveness and tarnish the reputation of the LVM Marks, as well as to create confusion in the marketplace, as consumers are likely to believe that the Offending

Commercial is authorized or endorsed by Louis Vuitton, or that Hyundai's products are somehow associated, affiliated with, or sponsored by Louis Vuitton or LVM brand products.

28. Having been seen by tens of millions of viewers during the Super Bowl and by untold number of viewers of Hyundai's websites, Hyundai's Offending Commercial has injured and is likely to continue to injure Louis Vuitton's good will and reputation by impairing the distinctiveness of the LVM Marks and by tarnishing the LVM Marks in harming their valuable reputation. Also, Louis Vuitton has no control over the quality of Hyundai's products that are being promoted using the replica "LZ" initials and "X and O" elements in a monogram pattern, which are confusingly similar to the LVM Marks. As a result, Louis Vuitton's extremely valuable reputation may be permanently damaged. If Hyundai's conduct is not enjoined, it will greatly injure the value of the LVM Marks and the ability of the LVM Marks to indicate goods emanating from a single source.

29. Hyundai's unauthorized acts as described herein have caused and will continue to cause irreparable damage to Louis Vuitton's business and good will unless permanently restrained by this Court. Louis Vuitton has no adequate remedy at law.

## COUNT I
### Trademark Dilution (15 U.S.C. §1125(c))

30. Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 29, above.

31. The LVM Marks are famous and well known throughout the United States, and within the meaning of 15 U.S.C. §1125(c), having been used nationally for decades.

32. As a result of extensive advertising and promotion of the LVM Marks and Louis Vuitton's sale of goods bearing the LVM Marks worldwide, the LVM Marks have become famous and are uniquely and exclusively associated with Louis Vuitton and Louis Vuitton designer accessories.

33. Hyundai, as a result of its Offending Commercial, is and/or has been engaged in the use of marks confusingly similar to the LVM Marks in commerce.

34. Hyundai's illegal conduct has created a likelihood of dilution and has continued and will continue to disparage, damage and lessen the distinctiveness of the LVM Marks by both blurring and tarnishing the marks.

35. Hyundai's unauthorized use of imitations of the LVM Marks featured in the Offending Commercial is likely to dilute the distinctive quality of each of the famous LVM Marks by lessening their capacity to identify and distinguish Louis Vuitton exclusively as the source of goods bearing the LVM Marks, in violation of 15 U.S.C. § 1125(c).

36. Hyundai's unauthorized use of imitations of the LVM Marks featured in the Offending Commercial is also likely to dilute each of the LVM Marks by tarnishing their inestimable value through impermissible association with products of inferior quality, which would reflect negatively on Louis Vuitton in violation of 15 U.S.C. §1125(c).

37. Hyundai's actions were and continue to be intentional or with a reckless disregard for or willful blindness to Louis Vuitton's rights, and were and are for the express purpose of trading on Louis Vuitton's reputation and diluting the LVM Marks.

38. Hyundai's conduct, unless permanently enjoined, will cause immediate

and irreparable harm to Louis Vuitton and to its good will and reputation.

39.     Louis Vuitton has no adequate remedy of law.

## COUNT II
## Trademark Dilution Under New York Law (N.Y.G.B.L. § 360-*l*)

40.     Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 39, above.

41.     The LVM Marks are famous and well known throughout New York, and within the meaning of New York General Business Law § 360-*l*, having been used in the state for decades.

42.     As a result of extensive advertising and promotion of the LVM Marks and Louis Vuitton's sale of goods bearing the LVM Marks worldwide, the LVM Marks have become famous and are uniquely and exclusively associated with Louis Vuitton and Louis Vuitton designer accessories.

43.     Hyundai, as a result of its Offending Commercial, is and/or has been engaged in the use of marks confusingly similar to the LVM Marks in commerce. Hyundai's unauthorized use of imitations of the LVM Marks in the Offending Commercial commenced after the LVM Marks were federally registered and had become famous and distinctive in New York.

44.     Hyundai's illegal conduct is likely to cause dilution and, unless enjoined, will continue to disparage, damage and lessen the distinctiveness of the LVM Marks by blurring and tarnishing the marks. Such conduct violates New York General Business Law § 360-*l*.

45.     Hyundai's actions were and continue to be intentional or with a reckless

disregard for or willful blindness to Louis Vuitton's rights, and were and are for the express purpose of trading on Louis Vuitton's reputation and diluting the LVM Marks.

46. Hyundai's conduct, unless permanently enjoined, will cause immediate and irreparable harm to Louis Vuitton and to its good will and reputation.

47. Louis Vuitton has no adequate remedy of law.

## COUNT III
### False Designation of Origin/Unfair Competition (15 U.S.C. § 1125(a)(1)(A))

48. Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 47, above.

49. For over 100 years, Louis Vuitton has used the LVM Marks as identifiers of source. As a result of the tremendous secondary meaning Louis Vuitton has created, the LVM Marks are strong marks entitled to the broadest scope of protection.

50. Hyundai's unauthorized use of imitations of the LVM Marks as part of the Offending Commercial constitutes a use in commerce of a false designation of origin as Hyundai's use of imitations of the LVM Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Hyundai with Louis Vuitton, or as to the origin, sponsorship, or approval of Hyundai's goods, services or commercial activities by Louis Vuitton. Consumers are likely to be misled into believing that Hyundai is somehow associated with Louis Vuitton and that both the Offending Commercial and Hyundai automobiles are sponsored by, licensed by, or otherwise approved by Louis Vuitton.

51. Hyundai was on actual and constructive notice of Louis Vuitton's exclusive rights in the LVM Marks. Hyundai's use of colorable imitations is willful and in bad faith, and was done with the full knowledge of the good will and the reputation

associated with the LVM Marks and with full knowledge that Hyundai has no right, license or authority to use the LVM Marks or any other marks or trade dress confusingly similar thereto.

52. Hyundai's acts are intended to reap the benefit of the good will that Louis Vuitton has created in the LVM Marks and constitute false designation of origin and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

53. Hyundai's conduct has caused and is causing immediate and irreparable injury to Louis Vuitton and will continue to both damage Louis Vuitton and to deceive the public unless enjoined by this Court. Louis Vuitton has no adequate remedy at law.

## COUNT IV
## Common Law Unfair Competition

54. Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 53, above.

55. Louis Vuitton has common law rights in the United States and in the state of New York to use the LVM Marks in connection with the purposes stated on the Principal Register.

56. Each of the LVM Marks is famous and highly distinctive of Louis Vuitton as a company and Louis Vuitton as a brand, and each is entitled to the broadest scope of protection.

57. Hyundai's use of trademarks confusingly similar to the LVM Marks as featured in the Offending Commercial constitutes unfair competition under New York common law.

58. Hyundai has engaged in the foregoing act of unfair competition with the intent to gain unfair commercial advantage and to profit from Louis Vuitton's long-standing good will and business reputation associated with the luxury products bearing the LVM Marks.

59. Hyundai's act of unfair competition has the effect of unjustly enriching it at Louis Vuitton's expense. Louis Vuitton has suffered damages as a result. Unless this Court permanently enjoins Hyundai's unfair competition, Louis Vuitton will be further and irreparably damaged.

60. Louis Vuitton has no adequate remedy at law. Unless Hyundai is permanently enjoined, Louis Vuitton will be irreparably injured because of its loss of good will and reputation stemming from Hyundai's use of marks confusingly similar to the LVM Marks to advertise its products.

## COUNT V
## Trademark Infringement (15 U.S.C. §1114(1))

61. Louis Vuitton hereby repeats and realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 60, above.

62. The LVM Marks are valid, subsisting and in full force and effect.

63. Pursuant to 15 U.S.C. §1057(b) and 15 U.S.C. §1065, the registration of the LVM Marks is *prima facie* evidence of the validity of such registrations, and of Louis Vuitton's ownership of the marks. The registrations also provide the exclusive right to Louis Vuitton to use said marks in commerce in connection with the products identified on the principal register. Furthermore, pursuant to 15 U.S.C. § 1065, the LVM Marks numbered 297,594; 1,519,828; 1,770,131; 2,361,695; 2,399,161 and others outlined in Exhibit A are incontestable. The incontestability of the marks is conclusive evidence of

the validity of the marks, Louis Vuitton's ownership of the marks and Louis Vuitton's exclusive right to use the marks in commerce. 15 U.S.C. § 1115(b).

64. Without the authorization of Louis Vuitton, Hyundai has used and continues to use or cause to be used confusingly similar trademarks to advertise and promote its automobiles in the Offending Commercial in commerce.

65. Hyundai's conduct has caused and will likely continue to cause confusion, mistake, and deception among the general consuming public as to the origin and quality of its products advertised under the Offending Commercial.

66. Hyundai's conduct constitutes infringement of the registered LVM Marks in violation of Louis Vuitton's rights under Section 32 of the Lanham Act, 15 U.S.C. §1114(1).

67. Hyundai's "LZ" initials and "X and O" geometric elements, as well as the pattern in which these designs are arranged, are confusingly similar to Louis Vuitton's registered marks because they closely resemble the LV, Toile Monogram, and Flowers marks in visual appearance, and therefore infringe on the LVM registrations. Indeed, when viewed quickly on television during the Offending Commercial, the "LZ" and "X and O" design marks look identical to the LVM Marks.

68. Hyundai's use of marks confusingly similar to the LVM Marks has damaged Louis Vuitton's good will in its trademarks, prestige and reputation of its premium quality fashion accessories, and, unless permanently enjoined, will continue to damage Louis Vuitton's good will in its trademarks, its prestige and reputation. The potential harm to Louis Vuitton's good will, prestige and reputation is both vast and irreparable. As a result, Louis Vuitton has no adequate remedy at law.

69. In advertising, manufacturing, offering for sale, distributing and/or selling products under marks confusingly similar to the LVM registrations, Hyundai has acted willfully, in bad faith and in reckless disregard of Louis Vuitton's rights.

70. To the extent that Hyundai derives a profit from the advertising, distribution and sale of its automobiles promoted through the Offending Commercial, Hyundai will be unjustly enriched at Louis Vuitton's expense. Louis Vuitton is therefore entitled to an accounting and disgorgement of all profits gained by Hyundai from sales resulting from this advertisement.

**WHEREFORE** Louis Vuitton prays that this Court enter judgment for Louis Vuitton and against Hyundai:

A. Finding that Hyundai's use of imitations of the LVM Marks in the Offending Commercial constitutes dilution under Section 43(c) of the Lanham Act;

B. Finding that Hyundai's dilution of the famous LVM Marks under Section 43(c) of the Lanham Act was willful;

C. Finding that Hyundai's use of imitations of the LVM Marks in the Offending Commercial constitutes dilution under New York General Business Law § 360-*l*;

D. Finding that Hyundai's adoption and use of imitations of the LVM Marks featured in the Offending Commercial constitutes unfair competition in violation of Section 43(a) of the Lanham Act;

E. Finding that Hyundai's adoption and use of imitations of the LVM Marks featured in the Offending Commercial was willful and was done with the intent to cause confusion, to cause mistake and/or to deceive;

F. Finding that Hyundai's adoption and use of imitations of the LVM Marks featured in the Offending Commercial constitutes unfair competition under New York law;

G. Finding that Hyundai's adoption and use of imitations of the LVM Marks featured in the Offending Commercial constitutes infringement of Louis Vuitton's registered trademark rights in violation of Section 32 of the Lanham Act;

H. Permanently enjoining Hyundai, and all of its officers, agents, servants, employees, and their attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or

otherwise, from:

(1) Diluting the LVM Marks by blurring or tarnishing;

(2) Imitating, copying, or making unauthorized use of any of the LVM Marks, or any mark that is confusingly similar or a colorable imitation of the LVM Marks, including, but not limited to, as part of the Offending Commercial;

(3) Advertising or promoting any simulation, reproduction, counterfeit, copy or colorable imitation of any of the LVM Marks, or any mark that is confusingly similar or a colorable imitation of the LVM Marks, including but not limited to the "LZ" initials or "X and O" geometric element replicas in the Offending Commercial, or any other indicia associated with Louis Vuitton;

(4) Using any false designation of origin or false description, or performing any act which can, or is likely to, lead members of the trade or public to believe that Hyundai is in any manner associated with Louis Vuitton, or that any product imported, manufactured, produced, distributed, circulated, advertised, promoted, displayed, sold, or offered for sale by Hyundai is associated with Louis Vuitton, is connected with Louis Vuitton, is a genuine product of Louis Vuitton, or is authorized, licensed, sponsored, or otherwise approved by Louis Vuitton;

(5) Engaging in any other activity constituting unfair competition with Louis Vuitton, or constituting infringement of the LVM Marks; and

(6) Instructing, assisting, aiding or abetting any other person or business entity in engaging in any of the activities referred to in subparagraphs (1)-(5) above;

I. Ordering that Hyundai deliver up to counsel for Louis Vuitton for destruction all copies of the Offending Commercial, and all other advertisements, promotional or marketing materials featuring the imitations of the LVM Marks, and any other materials or any other articles bearing Hyundai's "LZ" or "X and O" geometric pattern design, or any other marks that dilute the LVM Marks, are confusing similar to or a colorable imitation of, and/or infringe the LVM Marks, and all plates, molds, and any other means of producing such materials and products, if any, and that Louis Vuitton be permitted to destroy all such materials without compensation to Hyundai;

J. Ordering an accounting of Hyundai's profits from its sales since the first televised broadcast of the Offending Commercial;

K. Awarding Louis Vuitton its damages and Hyundai's profits arising out of Hyundai's willful dilution of the famous LVM Marks under Section 43(a) of the

Lanham Act;

L. Awarding Louis Vuitton its damages and Hyundai's profits arising out of Hyundai's trademark infringement, false designation of origin, and unfair competition;

M. Awarding Louis Vuitton treble damages in an amount to be determined at trial as a result of Hyundai's willful dilution of Louis Vuitton's registered trademarks and/or Hyundai's intentional misconduct and/or Hyundai's intentional infringement, pursuant to 15 U.S.C. §1117(a);

N. Awarding Louis Vuitton its costs and disbursements, including reasonable attorneys' fees, pursuant to 15 U.S.C. §1117(a);

O. Awarding Louis Vuitton interest, including prejudgment interest, on the foregoing amount pursuant to 15 U.S.C. §1117(a);

P. Awarding Louis Vuitton punitive damages in an amount to be at trial as a result of Hyundai's willful and intentional misconduct; and

Q. Awarding Louis Vuitton such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Louis Vuitton Malletier, S.A. demands a trial by jury on all issues and claims so triable.

Dated:  February 26, 2010                           Respectfully submitted,

By: _____
Mark C. Zauderer
Jonathan D. Lupkin
Erica Fabrikant
FLEMMING ZULACK
WILLIAMSON ZAUDERER LLP
One Liberty Plaza, 35th Floor
New York, NY 10006
(212) 412-9500
(212) 964-9200 (facsimile)
mzauderer@fzwz.com
jlupkin@fzwz.com
efabrikant@fzwz.com

Robert E. Shapiro (*pro hac vice*
  application to be submitted)

338936/24607                           17

Wendi E. Sloane (*pro hac vice*
  application to be submitted)
BARACK FERRAZZANO
KIRSCHBAUM & NAGELBERG LLP
200 W. Madison Street
Suite 3900
Chicago, Illinois 60606
(312) 984-3100
(312) 984-3150 (facsimile)
rob.shapiro@bfkn.com
wendi.sloane@bfkn.com

Attorneys for Plaintiff
LOUIS VUITTON MALLETIER S.A.