**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LOUIS VUITTON MALLETIER, S.A.,

                Plaintiff,

     v.

HYUNDAI MOTOR AMERICA,

                Defendant.

No. 10 Civ. 1611 (PKC)

**DEFENDANT HYUNDAI MOTOR AMERICA'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO CERTIFY THE MARCH 22, 2012 ORDER**
**FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP

Robert L. Raskopf
Julie B. Shapiro
Todd Anten

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:  (212) 849-7000
Fax:  (212) 849-7100
robertraskopf@quinnemanuel.com
julieshapiro@quinnemanuel.com
toddanten@quinnemanuel.com

*Attorneys for Defendant Hyundai*
*Motor America*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ..............................................................................................................................3

I.      THIS COURT SHOULD CERTIFY THE MARCH 22 ORDER FOR
       INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)................................................3

       A.     The March 22 Order Regarding Fair Use And The First Amendment
           Involves Controlling Questions Of Law ..................................................................3

       B.     There Are Substantial Grounds For Difference Of Opinion As To The
           March 22 Order's Stance On Fair Use And The First Amendment ........................6

           1.     Hyundai's Fair Use Defense To Dilution ....................................................7

           2.     Hyundai's First Amendment Arguments On Infringement And
                Unfair Competition ..................................................................................13

       C.     An Immediate Appeal On This Issue Will Materially Advance The
           Termination Of The Litigation................................................................................14

II.     THIS COURT SHOULD STAY THE PROCEEDINGS PENDING APPELLATE
      REVIEW OF HYUNDAI'S MOTION...........................................................................16

CONCLUSION..........................................................................................................................17

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Am. Geophysical Union v. Texaco Inc.*,
   802 F. Supp. 1 (S.D.N.Y. 1992)..............................................................................6, 13, 15

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983)...................................................................................................................5

*Burck v. Mars, Inc.*,
   571 F. Supp. 2d 446 (S.D.N.Y. 2008)...............................................................................12

*CCA and B, LLC v. F+W Media Inc.*,
   --- F. Supp. 2d. ---, No. 11-CV-2056, 2011 WL 4583790 (N.D. Ga. Sept. 22, 2011)............10

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)...............................................................................................................9

*Charles Atlas, Ltd. v. DC Comics, Inc.*,
   112 F. Supp. 2d 330 (S.D.N.Y. 2000)........................................................................5, 7, 8

*City of Cincinnati v. Discovery Network, Inc.*,
   507 U.S. 410 (1993)..............................................................................................................12

*Community Trust Bancorp., Inc. v. Community Trust Finance Corp.*,
   No. 10-CV-062, 2011 WL 2020246 (E.D. Ky. May 24, 2011) ...........................................16

*Deere & Co. v. MTD Prods., Inc.*,
   41 F.3d 39 (2d Cir. 1994) ............................................................................................2, 4, 11, 12

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
   547 F.3d 1095 (9th Cir. 2008) .......................................................................................9, 10

*In re Duplan Corp.*,
   591 F.2d 139 (2d Cir. 1978)..................................................................................................3

*In re Fosamax Prods. Liab. Litig.*,
   No. 06-MD-1789, 2011 WL 2566074 (S.D.N.Y. June 29, 2011) ...........................................6

*Girl Scouts of U.S. of Am. v. Bantam Doubleday Dell Publ'g Group, Inc.*,
   808 F. Supp. 1112 (S.D.N.Y. 1992),
   *aff'd* 996 F.2d 1477 (2d Cir. 1993) ......................................................................................5

*Gmurzynska v. Hutton*,
   355 F.3d 206 (2d Cir. 2004)................................................................................................12

*Harley-Davidson, Inc. v. Grottanelli*,
   164 F.3d 806 (2d Cir. 1999)............................................................................................12, 13

*Herbert v. Lando*,
   No. 74-CV-434, 1985 WL 463 (S.D.N.Y. Mar. 26, 1985) ......................................................15

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ..................................................................................................11

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
   73 F.3d 497 (2d Cir. 1996) ...................................................................................................4, 11

*Juarez v. Jani-King of California, Inc.*,
   No. 09-CV-03495, 2012 WL 525511 (N.D. Cal. Feb. 16, 2012) ...........................................16

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
   Amministrazione Straordinaria*,
   921 F.2d 21 (2d Cir. 1990) ..............................................................................................3, 6, 15

*Laura Secord Candy Shops Ltd. v. Barton's Candy Corp.*,
   368 F. Supp. 851 (N.D. Ill. 1973) ...........................................................................................15

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
   507 F.3d 252 (4th Cir. 2007) ...........................................................................................4, 7, 11

*Lopez v. Youngblood*,
   No. 07-CV-0474, 2009 WL 2062883 (E.D. Cal. July 15, 2009) ..............................................1

*Mattel, Inc. v. MCA Records, Inc.*,
   296 F.3d 894 (9th Cir. 2002) ...............................................................................................9, 13

*New York Racing Ass'n, Inc. v. Perlmutter Publ'g, Inc.*,
   959 F. Supp. 578 (N.D.N.Y. 1997) ..................................................................................2, 5, 13

*Primavera Familienstifung v. Askin*,
   139 F. Supp. 2d 567 (S.D.N.Y. 2001) .......................................................................................3

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ...............................................................................................5, 9, 12

*Rogers v. Koons*,
   960 F.2d 301 (2d Cir. 1992) .............................................................................................9, 10, 14

*Skylon Corp. v. Guilford Mills, Inc.*,
   901 F. Supp. 711 (S.D.N.Y. 1995) ...........................................................................................13

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
   588 F.3d 97 (2d Cir. 2009) ................................................................................................11, 13

*Yankee Publ'g. Inc. v. News Am. Publ'g Inc.*,
   809 F. Supp. 267 ........................................................................................................................5

**Statutes**

15 U.S.C. § 1125(c)(3)(A) ....................................................................................1, 4,  6, 7, 8

15 U.S.C. § 1125(c)(3)(A)(ii) ...............................................................................2, 8

17 U.S.C. § 107..................................................................................................6

28 U.S.C. § 1292(b) ........................................................................... passim

**Other Authorities**

152 Cong. Rec. S1921 ........................................................................................8

## PRELIMINARY STATEMENT[1]

Defendant Hyundai Motor America ("Hyundai") respectfully requests that this Court certify its March 22, 2012 Memorandum and Order[2] ("March 22 Order"), granting summary judgment in favor of plaintiff Louis Vuitton Malletier, S.A. ("LVM") and denying summary judgment to Hyundai, for interlocutory appeal under 28 U.S.C. § 1292(b) on a narrow, but case-dispositive, legal issue: whether Hyundai's use of a basketball bearing a pattern (the "Pattern") suggestive of LVM's well-known fashion monogram (the "LVM Marks")—in a car commercial that provided humorous vignettes of socio-economic commentary on the excesses of luxury by pairing well-known symbols of extravagance with everyday situations to create absurd juxtapositions (the "Commercial")—may be protected by the fair use provision of the Trademark Dilution Revision Act of 2006 ("TDRA"), 15 U.S.C. § 1125(c)(3)(A), or the First Amendment.[3]

In its March 22 Order, the Court held that no jury could reasonably find that Hyundai's use of the Pattern was fair under the TDRA, and imported this analysis into its ruling rejecting Hyundai's First Amendment defense to LVM's infringement claims.  *See* March 22 Order at 36-39, 50.  There is remarkably little guidance from courts on the applicability of the fair use and First Amendment doctrines to the specific type of use Hyundai made in connection with the

---

[1]   The Court's Individual Rules of Practice state that a letter requesting a pre-motion conference is required for most non-discovery motions in civil cases.  *See* ¶ 2.A.  However, counsel for Hyundai was informed by the Court's law clerk that no letter was necessary for this petition.

[2]   The March 22 Order is dated March 22, 2012; however, it was not entered into ECF, and thus not sent to the parties, until March 23, 2012.  *See* Dkt. No. 55.  In addition, the Federal Rules of Civil Procedure do not specify the time by which a party must file a petition seeking certification for interlocutory appeal.  However, courts agree it should "be filed in the district court within a reasonable time after the order sought to be appealed."  *Lopez v. Youngblood*, No. 07-CV-0474, 2009 WL 2062883, at *3 (E.D. Cal. July 15, 2009).  Given that this petition is filed only ten days after receiving the March 22 Order—and in advance of Hyundai's deadline for filing a motion for reconsideration—this petition is timely.

[3]   In addition, for the reasons discussed in Part II *infra*, Hyundai respectfully requests that the Court stay trial proceedings in this action pending appellate review of the March 22 Order.

LVM Marks—*i.e.*, use of another's trademark (1) in an advertisement for a non-competing product, (2) where the challenged mark is not on the product itself, but rather is a small component of the advertisement's overall humorous and outlandish context, and (3) where the advertisement also provides expansive social commentary on larger societal issues, but does not solely comment on the plaintiff.[4]  Further, the Court narrowly interpreted § 1125(c)(3)(A)(ii) to bar LVM's dilution claim only if LVM was the central target of Hyundai's commentary—a position that has not been adopted by any court and is, at a minimum, susceptible to substantial difference of opinion.

While Hyundai acknowledges that interlocutory appeal is the exception and not the rule, Hyundai respectfully submits that certification under § 1292(b) is appropriate here, given the unclear state of the law as to when use of another's trademark in a television commercial for a non-competing product, where the mark is used in the context of offering larger societal commentary, is protected.  As one New York district court explained in granting certification for appeal, the thorny intersection between trademark law and free speech particularly warrants interlocutory review:

> In this case, the legal principles involved are somewhat difficult, and the factual circumstances of this case (i.e., the reproduction of artwork in other media) add a level of complexity to the legal analysis. In addition, the First Amendment balancing test applied by the Court is highly contextual. While the Court is confident that it has come to the proper conclusions, the Court finds that there is clearly room for difference of opinion.

*New York Racing Ass'n, Inc. v. Perlmutter Publ'g, Inc.*, 959 F. Supp. 578, 584 (N.D.N.Y. 1997).

Likewise, this case involves difficult and inconsistent legal principles, and the evocation of the

---

[4]   Although direct competition is not a requirement to find dilution by blurring, it certainly is relevant as to Hyundai's fair use defense.  *See*, *e.g.*, *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 45 (2d Cir. 1994) (finding "more leeway for alterations is appropriate in the context of satiric expression and humorous ads for noncompeting products").

LVM Marks is highly contextual.  Further, because Hyundai's fair use and First Amendment arguments are not only central, but potentially dispositive of all of LVM's claims, this petition involves controlling issues of law for which appellate reversal may obviate any need for a trial. This petition therefore satisfies all three conditions governing § 1292(b) petitions for interlocutory appeal, and this Court should certify the March 22 Order for interlocutory appeal and stay these proceedings pending appellate disposition.[5]

## ARGUMENT

I. **THIS COURT SHOULD CERTIFY THE MARCH 22 ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**

Interlocutory appeal is warranted here because the March 22 Order (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) as to which "an immediate appeal . . . may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

A. **The March 22 Order Regarding Fair Use And The First Amendment Involves Controlling Questions Of Law**

A question of law is "controlling" in a wide range of circumstances, including where its resolution (1) "could result in dismissal of the action," *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001), or (2) "may importantly affect the conduct of an action." *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978) (Friendly, J.); *see also Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[t]he resolution of an issue need not necessarily terminate an action in order to be 'controlling'").

---

[5]   Hyundai preserves all rights to appeal the March 22 Order, both on the grounds stated herein and any other grounds.

The March 22 Order stated that, under the TDRA, "no reasonable trier of fact could conclude that the Louis Vuitton-style marks shown in the 'Luxury' ad could constitute" fair use, and that "the authorities extensively briefed by the parties would not support a different result." March 22 Order at 36, 39. The Court further held that, as to LVM's trademark infringement and unfair competition claims, the "subtle[ty]" of the comment and Hyundai's intent to offer a broader social critique rather than a direct comment on LVM is "unworthy" of First Amendment protection. *Id.* at 50. These determinations indisputably involve controlling questions of law.

**First,** the Court's determination that no reasonable trier of fact could conclude that Hyundai's use of the Pattern could constitute fair use was central to the Court's granting of summary judgment to LVM on dilution. As the text of the TDRA explicitly notes, fair use "shall not be actionable as dilution by blurring." 15 U.S.C. § 1125(c)(3); *see also Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 266 (4th Cir. 2007) ("[T]he TDRA does provide that fair use is a complete defense . . . ."). If the Second Circuit reverses the March 22 Order on this point and recognizes that Hyundai's use of the Pattern was fair, LVM's dilution claims would be eliminated in their entirety.[6] This is a prototypical example of a "controlling" question of law. Even if the Second Circuit were to opine that a genuine issue of material fact exists as to whether Hyundai's use was fair, such an outcome would importantly affect this litigation, as a second jury would then have the opportunity to find Hyundai's use to be fair.

**Second**, the Court's determination that Hyundai's use of the Pattern is not worthy of First Amendment protection was central to the Court's evaluation of LVM's infringement and unfair competition claims. However, if the Second Circuit accepts Hyundai's arguments that the

---

[6]   Although the March 22 Order did not separate its analyses of fair use as to Hyundai's federal and state-law dilution claims, it did rely on cases addressing fair use in state-law dilution cases. *See* March 22 Order at 38 (citing *Deere & Co.* and *Hormel Foods*). Likewise, Hyundai's fair use defense applies to both of LVM's dilution claims.

Commercial, at least in part, was deserving of First Amendment expressive and thus not "pure" commercial speech, the Court's resolution of Hyundai's First Amendment defense would be dramatically altered.[7]  *See*, *e.g.*, *Yankee Publ'g. Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 278-81 (finding use of a mark "as part of a socio-economic commentary" constituted "communication of an expressive message," and concluding that "the free speech interests protected by the First Amendment here far outweigh [plaintiff's] interest in protecting its trademark") (emphasis omitted).  Courts in this district routinely grant summary judgment in favor of ***defendants*** upon recognition that a defendant's use of a trademark is entitled to First Amendment consideration.  *See*, *e.g.*, *Rogers v. Grimaldi*, 875 F.2d 994, 1001-02 (2d Cir. 1989) (summary judgment in favor of defendant upon balancing claims with First Amendment interests); *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 341 (S.D.N.Y. 2000) (same); *Girl Scouts of U.S. of Am. v. Bantam Doubleday Dell Publ'g Group, Inc.*, 808 F. Supp. 1112, 1130 (S.D.N.Y. 1992), *aff'd* 996 F.2d 1477 (2d Cir. 1993) (same).  Reversal by the Second Circuit may result in a decision that Hyundai's use of the Pattern in the Commercial warrants a grant of summary judgment in Hyundai's favor on these claims, eliminating those causes of action entirely.  At a minimum, the March 22 Order's conclusions regarding Hyundai's First Amendment interests may have enormous impact on evaluation of the merits of LVM's infringement and unfair competition claims, and therefore are controlling issues under § 1292(b). *See New York Racing Ass'n,* 959 F. Supp. at 583 (certifying order for interlocutory appeal in trademark infringement action because the First Amendment issues "are central to the Court's analysis and materially affect the outcome of this case").

---

[7]  Even purely commercial speech is "entitled to . . . qualified but nonetheless substantial [First Amendment] protection."  *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 68 (1983).

**B.     There Are Substantial Grounds For Difference Of Opinion As To The March 22 Order's Stance On Fair Use And The First Amendment**

The second prerequisite to certification under § 1292(b) is also satisfied here.  It is well-established that "[t]here is substantial ground for difference of opinion when the authority on a point of law is in conflict, or when there is a 'relative lack of authority on the precise question.'" *In re Fosamax Prods. Liab. Litig.*, No. 06-MD-1789, 2011 WL 2566074, at *5 (S.D.N.Y. June 29, 2011) (citation omitted); *see also Klinghoffer*, 921 F.2d at 25 (approving district court's certification where "issues are difficult and of first impression").

Here, substantial grounds exist for disagreement with the Court's decision that Hyundai's use of the Pattern is not protected as fair use or by the First Amendment.  As then-District Court Judge Pierre Leval noted in certifying an order for interlocutory review on copyright fair use:

> Although it is my belief that the Court of Appeals will affirm my ruling, I must acknowledge that the area of fair use is one which spawns enormous differences of opinion.  Litigation of fair use questions has resulted in numerous reversals of district courts by courts of appeals, and of courts of appeals by the Supreme Court. Generally speaking, the decisions of the Supreme Court on fair use have not formulated a clear framework or standard governing future cases.

*Am. Geophysical Union v. Texaco Inc.*, 802 F. Supp. 1, 29-30 (S.D.N.Y. 1992).  This describes the state of the law in the trademark realm, particularly as it relates to the relatively new TDRA. As the Court acknowledged, there is no clear framework governing cases such as the instant one—which involves (non-parodic) use of a mark to provide commentary on general social issues in the context of non-competing products—and all attempts at analogy are arguably distinguishable.  *See* March 22 Order at 37 ("I am mindful that several of the decisions arose from bench trials or preliminary injunction motions, and therefore may be distinguishable. Certain other decisions explore fair use under the Copyright Act, 17 U.S.C. § 107, the text of which varies from the fair-use provision of the TDRA.").

6

### 1.      Hyundai's Fair Use Defense To Dilution

There are substantial grounds for disagreement as to whether Hyundai's use of the Pattern may constitute fair use under the TDRA.[8]  Section 1125(c)(3)(A) excludes as non-actionable dilution:

> ___Any fair use___, including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person ___other than as a designation of source for the person's own goods or services, including___ use in connection with—
>
>       . . .
>
>> (ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.

15 U.S.C. § 1125(c)(3)(A) (emphases added).

***First***, this language explicitly protects ***any*** fair use other than as a designation of source of a person's own goods or services.  In responding to Hyundai's argument that the Pattern was not used to designate Hyundai's own goods, services or business, *see also Haute Diggity Dog,* 507 F.3d at 266, but rather to refer back to LVM, the Court ruled that this "argument conflates dilution with a false designation of origins claim."  March 22 Order at 25.  However, the Court's Order directly contradicts the text of § 1125(c)(3)(A), which exempts "any fair use . . . other than as a designation of source for the person's own goods or services."  Further, the March 22 Order is in tension with this Circuit's continued recognition that leeway be given "when the unauthorized use of a trademark is made not for identification of product origin but rather for the expressive purposes of comedy, parody, allusion, criticism, news reporting and commentary." *Charles Atlas*, 112 F. Supp. 2d at 335 (citation omitted); *see also Haute Diggity Dog,* 507 F.3d at 266 ("Under the statute's plain language, parodying a famous mark is protected by the fair use

---

[8]   At the outset, the Court acknowledged that "there is limited case law discussing the fair use exception of the TDRA," March 22 Order at 31, further justifying interlocutory review.

defense only if the parody is ***not*** 'a designation of source for the person's own goods or services.'") (quoting 15 U.S.C. § 1125(c)(3)(A)(ii)).   Hyundai respectfully submits that substantial grounds exist for disagreement with the opinion that Hyundai's failure to designate its own goods with the LVM Marks has no relevance to its fair use defense under the TDRA.

***Second***, the text of the TDRA does not limit its exclusion of commentary of another's mark to that which "comment[s] upon the famous mark owner or the goods or services of the famous mark owner."  *See* § 1125(c)(3)(A)(ii).  Section 1125(c)(3)(A) provides that such acts are "include[ed]" in fair use, but nowhere states that this list is exhaustive; otherwise, the word "including" would be superfluous.  However, in quoting the TDRA, the Court omitted the word "including," suggesting that it viewed the examples in 15 U.S.C. § 1125(c)(3)(A)(ii) as exhaustive.[9]  *See* March 22 Order at 32.  In any event, the Court's insistence that Hyundai cannot qualify for fair use under the TDRA "[b]ecause Hyundai has disclaimed any comment, criticism or parody of [LVM]," *id.*, is subject to substantial disagreement based on the text of the TDRA— the text simply provides no such absolute requirement.[10]  Nor does the TDRA have any textual requirement that a plaintiff's mark be the direct target or centerpiece of commentary, *id.* at 36, as the text states only that there be "comment[]."  Indeed, no other court has construed the text of § 1125(c)(3)(A)(ii) so narrowly as to insert a new requirement of "directness."

***Third***, substantial grounds for disagreement exist as to whether viewers of the Commercial understand that the Pattern is, at least to some degree, offering commentary upon

---

[9]   The Court may have relied on LVM's misleading quoting of the TDRA in its moving brief, which conspicuously omitted the critical word "including." *See* LVM Opening Br. at 21 n.9.

[10]   The legislative history of the TDRA is unequivocal that Congress intended to make the TDRA at least coextensive with, if not more expansive than, the First Amendment. *See* 152 Cong. Rec. S1921, S1923 (daily ed. Mar. 8, 2006).  Even prior to the TDRA, courts in this cases recognized broad support for commentary.  *See, e.g., Charles Atlas*, 112 F. Supp. 2d at 335 & 337 n.10 (S.D.N.Y. 2000) (use of a trademark in communicating an editorial message, including commentary, "generally[] is accorded First Amendment deference") (citation omitted).

LVM, its goods, its services, and what it represents in society.  As the Court noted, Hyundai argued in its summary judgment briefing that the Commercial's "*overall intent* was not to comment directly on [LVM]" and it was not intended as a "*direct* attack."  March 22 Order at 35 (emphases added).  However, the Commercial certainly is capable of being understood as indirectly commenting on high-end symbols of fashion, *including* LVM—commentary on the plaintiff's mark need not be the focus or centerpiece for fair use to apply.  *See*, *e.g.*, *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) ("[O]nly the use of a trademark with '*no* artistic relevance to the underlying work *whatsoever*' does not merit First Amendment protection.  In other words, the level of relevance merely must be above zero.") (quoting *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 (9th Cir. 2002) (quoting *Grimaldi*, 875 F.2d at 999)).  Further, the central inquiry is not what Hyundai intended to communicate, but how an audience could reasonably perceive the Commercial.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583 (1994) (evaluating whether the challenged work "reasonably could be *perceived* as commenting on the original or criticizing it, to some degree") (emphasis added).  Favoring all inferences to Hyundai, as the Court must do in evaluating this petition, there are substantial grounds for differing opinions as to whether the Commercial comments on LVM.

*Fourth*, the March 22 Order asserts that "courts have rejected fair-use arguments that assert use directed toward expansive social criticism, as opposed to a targeted comment or parody of the original."  March 22 Order at 37.  The only case the Court cites is *Rogers v. Koons*, 960 F.2d 301, 310 (2d Cir. 1992), for the proposition that, under the Copyright Act, "absent a requirement that 'the copied work must be, at least in part, an object of the parody,' 'there would be no real limitation on the copier's use of another's copyrighted work to make a statement on

some aspect of society at large.'" *Id.* However, the very next sentences of *Koons* demonstrate that it is referring to scenarios where the audience is not aware of the copied work at all:

> If an infringement of copyrightable expression could be justified as fair use solely on the basis of the infringer's claim to a higher or different artistic use—***without insuring public awareness of the original work***—there would be no practicable boundary to the fair use defense. Koons' claim that his infringement of Rogers' work is fair use solely because he is acting within an artistic tradition of commenting upon the commonplace thus cannot be accepted. The rule's function is to insure that credit is given where credit is due. By requiring that the copied work be an object of the parody, ***we merely insist that the audience be aware that underlying the parody there is an original and separate expression, attributable to a different artist***.

*Koons*, 960 F.2d at 310 (emphases added). Here, however, there is no disputing that the basketball vignette encourages the audience to recognize the satirical evocation of the LVM Marks as a symbol of luxury that is entirely distinct from the practical Sonata—that joke depends on public awareness. And crucially, other courts have come to the opposite conclusion of the March 22 Order, recognizing that use of another's mark as in service of broader general commentary or criticism is worthy of fair use protection. *See*, *e.g.*, *E.S.S. Entm't 2000*, 547 F.3d at 1100 (use of plaintiff's mark not for purpose of commenting directly on plaintiff, but rather "to develop a cartoon-style parody of East Los Angeles," protected as fair use). At a minimum, substantial grounds for differing opinions exist.

**Fifth**, the Court's conclusion that Hyundai's use of the Pattern was "subtle," and that other courts have "not applied fair use when the defendant's mark is instead 'a subtle satire' of the original," March 22 Order at 38-39, is subject to substantial disagreement. Courts repeatedly have warned that subtlety in fair use must be considered in context. *See*, *e.g.*, *CCA and B, LLC v. F+W Media Inc.*, --- F. Supp. 2d. ---, No. 11-CV-2056, 2011 WL 4583790, at *6 (N.D. Ga. Sept. 22, 2011) (noting that "[a]n allegedly infringing parody should be considered in context" and concluding that "[t]he overall impact, though somewhat subtle, is to present enough visual

10

information to flag for consumers that the book is a parody"); *cf. Hilton v. Hallmark Cards*, 599 F.3d 894, 909-10 (9th Cir. 2010) (holding that "[t]he form of the expression to which [copyright fair use] applies [is] 'not confined to parody and can take many forms,' including 'fictionalized portrayal . . . heavy-handed lampooning . . . [and] ***subtle social criticism***'") (citation omitted, emphasis added).   Here, the context of the use of the Pattern, accompanied by caviar-eating policemen, a yacht-crowded driveway, and a chandelier-covered intersection—and in the basketball portion of the Commercial itself, a marble court and gold hoop—at a minimum creates a reasonable difference for opinion as to whether the Commercial is so "subtle" as to not be worthy of protection.[11]   Further, the only case cited by the Court which arguably found a "subtle" use to not be fair involved the placement and branding of the plaintiff's trademark on a directly competing product.  *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 113 (2d Cir. 2009) ("Starbucks" vs. "Charbucks" names appearing on competing coffee products).  Indeed, the Second Circuit repeatedly recognizes that the lack of direct competition to weigh strongly in favor of defendants when assessing fair use.  *See Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507-08 (2d Cir. 1996) ("Henson's merchandise will not be in direct competition with that of Hormel.  This is an important, even if not determinative, factor.");

---

[11]   Although the Court distinguishes these scenarios from the "over-the-top, unmistakable parodies" that other courts have recognized, March 22 Order at 38, the Court offers no explanation for its view that, in context, the incongruous juxtapositions in the Commercial are so subtle as to not offer commentary.  For example, *Haute Diggity Dog*, 507 F.3d at 260-61, involved a dog chew toy and Louis Vuitton products.  Taking all inferences in Hyundai's favor, reasonable grounds exist for viewing the vignettes in the Commercial, in full context, as being more outrageous than those in *Haute Diggity Dog*.  Similarly, in *Hormel Foods*, the Second Circuit looked to the context of the defendant's use of the name "Spa'am," recognizing that "Henson is not using the name 'Spa'am' as a product brand name.  Rather, Spa'am is a character in products branded with Henson's own trademark 'Muppet Treasure Island.'  This tends to dissipate the fear that SPAM will no longer be considered a unique product identifier."  Likewise, Hyundai does not use the LVM Marks on its own product; rather, the Pattern functions as a "character" in connection with the Hyundai-branded Sonata.

*Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812 (2d Cir. 1999) ("we have not hesitated to prevent a manufacturer from using an alleged parody of a competitor's mark to sell a competing product"); *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 45 (2d Cir. 1994) (granting "more leeway for alterations is appropriate in the context of satiric expression and humorous ads for noncompeting products").

       ***Sixth***, and finally, substantial grounds exist to construe the Commercial as including expressive elements that are protected as fair use.   Courts in this Circuit recognize the importance of protecting "hybrid" communications that "combin[e] artistic expression and commercial promotion" that are "inextricably intertwined." *Grimaldi*, 875 F.2d at 998; *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 457 (S.D.N.Y. 2008) ("[T]he commercial aspect of [the advertisements for M&Ms] is subtle . . . while the entertainment aspect is obvious."). "Commercial speech is 'speech which ***does no more*** than propose a commercial transaction.'" *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993)) (emphasis added); however, substantial grounds exist to interpret the Commercial as doing much more than ***only*** proposing a commercial transaction.   Here, the Commercial "inextricably intertwine[s]" artistic and commercial elements by focusing on a fanciful world in which well-known symbols of luxury are juxtaposed against everyday situations as part of a humorous commentary designed to make consumers think about the current definition of "luxury" during a recession.[12]   Further, to the extent that other courts have concluded that promotional use of a mark weighs against fair use, those cases address products in direct competition where the mark appears on the defendant's product.   *See Harley-*

---

[12]   Bolstering Hyundai's position that the Commercial does more than merely propose a commercial transaction are (1) it does not mention a price and (2) it emphasizes social commentary by superimposing on the screen the words "Think about it."   (Hyundai's Statement of Facts in Support of Summary Judgment ¶ 15.)

*Davidson, Inc.*, 164 F.3d at 812; *Starbucks Corp.*, 588 F.3d at 113.  *Contra Mattel, Inc.*, 296 F.3d at 900 ("The First Amendment may offer little protection for a competitor **who labels its commercial good** with a confusingly similar mark, but '[t]rademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view.'") (citation omitted, emphasis added).

*   *   *

Based on the above, Hyundai submits that while the Court is no doubt confident that its conclusions are correct, it should nonetheless acknowledge that there are substantial grounds for disagreement as to whether Hyundai is entitled to a fair use defense.  *See*, *e.g.*, *New York Racing Ass'n,* 959 F. Supp. at 584 ("While the Court is confident that it has come to the proper conclusions, the Court finds that there is clearly room for difference of opinion."); *Skylon Corp. v. Guilford Mills, Inc.*, 901 F. Supp. 711, 718 (S.D.N.Y. 1995) ("Although I am confident of my ruling on these facts, I find there is substantial ground for difference of opinion . . . ."); *Am. Geophysical Union*, 802 F. Supp. at 29 ("Although it is my belief that the Court of Appeals will affirm my ruling, I must acknowledge that the area of fair use is one which spawns enormous differences of opinion.").  The Court should likewise recognize that room for disagreement exists here.

2.   **Hyundai's First Amendment Arguments On Infringement And Unfair Competition**

For the reasons listed above, and which do not bear repeating, there also are substantial grounds for disagreement as to whether Hyundai's First Amendment arguments preclude LVM's infringement and unfair competition claims.   The Court dedicated one paragraph to this argument, referring to its fair use determination and holding that (1) any commentary is "more subtle" than First Amendment protection granted in other cases, and (2) Hyundai "acknowledged

13

that it intended to make no comment on the [LVM Marks], but instead offered a broader social critique." March 22 Order at 50.

As to the Court's ruling on the "subtlety" of the commentary in the Commercial—notwithstanding that the points of comparison provided by the Court are all parodies—Hyundai respectfully directs the Court to its fifth argument, Part I.B.1 *supra*.

Regarding the Court's statement on the protection of broader social critique, Hyundai respectfully directs the Court to its third and fourth arguments, Part I.B.1 *supra*. Hyundai additionally notes that the Court held "such motivations [as] unworthy of protection," citing *Koons*, 960 F.2d at 310. March 22 Order at 50. Again, *Koons* was a copyright case where the Second Circuit found no fair use because the audience would not be aware of the underlying work; at issue here is the exact opposite—the basketball vignette ***encourages*** the audience to recognize that the Pattern evokes the LVM Marks, to understand the broader commentary. Given that the Court gave no weight to Hyundai's First Amendment defense, and that substantial grounds exist for disagreement with the Court's resolution of this argument, the second requirement of § 1292(b) is satisfied as to LVM's claims of infringement and dilution.

## C. An Immediate Appeal On This Issue Will Materially Advance The Termination Of The Litigation

The final prerequisite for certification under § 1292(b) is also satisfied here because an immediate appeal will materially advance the termination of the litigation.

For the reasons explained above, *see* Part I.A *supra*, if the Circuit reverses the March 22 Order and holds that the Commercial (1) is fully protected by fair use regarding LVM's dilution claims and (2) is fully protected by the First Amendment regarding LVM's trademark infringement and unfair competition claims, it will terminate the litigation, thereby serving § 1292(b)'s underlying purpose of promoting federal judicial efficiency and economy. Because

14

interlocutory review, if Hyundai is fully successful, would entirely eliminate the need for a jury trial, certification is warranted.  *See Klinghoffer*, 921 F.2d at 24; *Am. Geophysical Union*, 802 F. Supp. at 29 (certifying order for interlocutory appeal where a favorable Second Circuit ruling on copyright fair use would eliminate need for trial); *Herbert v. Lando*, No. 74-CV-434, 1985 WL 463, at *2 (S.D.N.Y. Mar. 26, 1985) (certifying summary judgment order where, "if defendants prevail in the Court of Appeals, obtaining a ruling that the complaint should have been dismissed in its entirety on summary judgment, the first trial will have been unnecessary"); *Laura Secord Candy Shops Ltd. v. Barton's Candy Corp.*, 368 F. Supp. 851, 854 (N.D. Ill. 1973) (granting certification in trademark case involving infringement, dilution, and fair use after summary judgment because "it appears that an immediate appeal may materially advance the ultimate termination of the litigation. A trial may not be necessary if defendant prevails upon appeal or alternatively the prospect of two trials would be greatly reduced.").

Even if the Second Circuit does not fully adopt Hyundai's arguments, interlocutory review may avoid the likely possibility of a second jury trial.  If, for example, the Second Circuit does not determine that Hyundai is fully protected from dilution by a fair use defense, but decides that issues of material fact exist, a second jury would need to determine whether Hyundai is liable.  Likewise, if the Second Circuit finds that the Court did not sufficiently account for the value of Hyundai's First Amendment protection on LVM's infringement and unfair competition claims, a second trial may be required on those counts, depending on the Second Circuit's instruction.  In short, immediate appeal will materially advance this litigation by avoiding the need for a second (and possibly, even a first) trial.

## II.     THIS COURT SHOULD STAY THE PROCEEDINGS PENDING APPELLATE REVIEW OF HYUNDAI'S MOTION

For the same reasons, Hyundai respectfully requests that the Court stay proceedings pending appellate determination of Hyundai's petition and subsequent appeal on the merits. Under § 1292(b), an application for certification will stay district court proceedings if "the district judge or the Court of Appeals or a judge thereof shall so order."  District courts routinely stay actions pending appellate review of § 1292(b) motions.  *See, e.g., Juarez v. Jani-King of California, Inc.*, No. 09-CV-03495, 2012 WL 525511, at *2 (N.D. Cal. Feb. 16, 2012) (granting § 1292(b) certification and staying proceedings pending appellate resolution); *Community Trust Bancorp., Inc. v. Community Trust Fin. Corp.*, No. 10-CV-062, 2011 WL 2020246, at *5 (E.D. Ky. May 24, 2011) (granting § 1292(b) certification and staying proceedings pending appeal, in part because of expense of trademark litigation).

Staying the instant proceedings would strongly benefit judicial economy.  The Court has set a schedule which would require enormous expenditures of costs and resources by both parties, as well as judicial resources, over the next two months in preparing for trial.  *See* Dkt. No. 86, requiring Joint Pretrial Order, requests to charge, proposed voir dire, proposed verdict form, and fully briefed motions in limine by May 4, 2012, and scheduling Final Pretrial Conference for May 23, 2012.  Reversal by the Second Circuit would render such preparation nugatory and would conserve judiciary resources, including the unnecessary empanelling of jurors and the holding of an unnecessary trial.

## **CONCLUSION**

This Court should certify the March 22 Order for interlocutory appeal under § 1292(b), and stay district court proceedings in this action pending appellate determination.

DATED:       New York, New York
             April 2, 2012

QUINN EMANUEL URQUHART &
 SULLIVAN, LLP

By: _____
   Robert L. Raskopf
   Julie B. Shapiro
   Todd Anten

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone:  (212) 849-7000
Fax:  (212) 849-7100
robertraskopf@quinnemanuel.com
julieshapiro@quinnemanuel.com
toddanten@quinnemanuel.com

*Attorneys for Defendant Hyundai
Motor America*