UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>

LOUIS VUITTON MALLETIER, S.A.,

       Plaintiff,

   v.

HYUNDAI MOTOR AMERICA,

       Defendant.

No. 10 Civ. 1611 (PKC)

<u>DEFENDANT HYUNDAI MOTOR AMERICA'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO CERTIFY THE MARCH 22, 2012 ORDER
FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)</u>

QUINN EMANUEL URQUHART
  & SULLIVAN, LLP

Robert L. Raskopf
Julie B. Shapiro
Todd Anten

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
Fax: (212) 849-7100
robertraskopf@quinnemanuel.com
julieshapiro@quinnemanuel.com
toddanten@quinnemanuel.com

*Attorneys for Defendant Hyundai Motor America*

**TABLE OF CONTENTS**

        **Page**

I. HYUNDAI'S MOTION PRESENTS CONTROLLING QUESTIONS OF LAW ...................................................................................................................1

II. SUBSTANTIAL GROUNDS EXIST FOR DISAGREEMENT WITH THE LEGAL TESTS USED BY THE COURT ON FAIR USE AND THE FIRST AMENDMENT ......................................................................................2

    A. Statutory Interpretation Of The TDRA ..................................................3

    B. Whether Hyundai Must "Directly" Comment On LVM For Its Use To Be Fair ........................................................................................5

    C. Whether Expansive Social Commentary Is Worthy Of Protection .........6

    D. Whether The Commercial Includes Expressive Elements Protected By Fair Use .............................................................................................7

    E. Whether "Subtle" Commentary Is Protectable As Fair Use ...................8

III. IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION .............................................................9

CONCLUSION..............................................................................................................10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*62 Cases v. United States*,
    340 U.S. 593 (1951)..................................................................................................................4

*Bolger v. Youngs Drug Prods. Corp.*,
    463 U.S. 60 (1983)....................................................................................................................7

*Bourne Co. v. Twentieth Century Fox Film Corp.*,
    602 F. Supp. 2d 499 (S.D.N.Y. 2009)......................................................................................6

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)..................................................................................................................6

*Charles Atlas, Ltd. v. DC Comics, Inc.*,
    112 F. Supp. 2d 330 (S.D.N.Y. 2000)..................................................................................4, 5

*City of Cincinnati v. Discovery Network, Inc.*,
    507 U.S. 410 (1993)..................................................................................................................7

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group, Inc.*,
    886 F.2d 490 (2d Cir. 1989).....................................................................................................8

*Deere & Co. v. MTD Prods., Inc.*,
    41 F.3d 39 (2d Cir. 1994) ........................................................................................................9

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) .............................................................................................5, 7

*Facenda v. N.F.L. Films, Inc.*,
    542 F.3d 1007 (3d Cir. 2008)...................................................................................................7

*Grand Bahama Petrol. Co. v. Asiatic Petrol. Corp.*,
    550 F.2d 1320 (2d Cir. 1977)..............................................................................................9, 10

*Harley-Davidson, Inc. v. Grottanelli*,
    164 F.3d 806 (2d Cir. 1999).................................................................................4, 5, 6, 7, 9

*Herbert v. Lando*,
    No. 74-CV-434, 1985 WL 463 (S.D.N.Y. Mar. 26, 1985).....................................................10

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
    73 F.3d 497 (2d Cir. 1996).......................................................................................................9

*In re Del-Val Fin. Corp. Secs. Litig.*,
    874 F. Supp. 81 (S.D.N.Y. 1995)...........................................................................................10

*In re Enron Creditors Recovery Corp.*,
    No. 01-cv-16034, 2009 WL 3349471 (S.D.N.Y. Oct. 16, 2009)............................................2

*In re Fosamax Prods. Liab. Litig.*,
    No. 06-MD-1789, 2011 WL 2566074 (S.D.N.Y. June 29, 2011) ............................................3

*In re Indep. Serv. Orgs. Antitrust Litig.*,
    No. CIV. A. MDL-1021, 1997 WL 450028 (D. Kan. July 17, 1997).....................................10

*Jordan v. Jewel Food Stores, Inc.*,
    No. 10-cv-340, 2012 WL 512584 (N.D. Ill. Feb. 15, 2012) .......................................................7

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In
    Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990)...................................................................................................3

*Lorillard Tobacco Co. v. A & E Oil, Inc.*,
    503 F.3d 588 (7th Cir. 2007) ................................................................................................2

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
    507 F.3d 252 (4th Cir. 2007) ................................................................................................9

*McLean v. United States*,
    566 F.3d 391 (4th Cir. 2009) ................................................................................................4

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989)..................................................................................................8

*Rogers v. Koons*,
    960 F.2d 301 (2d Cir. 1992)..............................................................................................6, 7

*SEC v. Syn. Food Servs. Int'l*,
    No. 04-CV-1303, 2010 WL 5173267 (E.D.N.Y. Dec. 14, 2010) ..........................................10

*Samantar v. Yousuf*,
    130 S. Ct. 2278 (2010)..........................................................................................................3

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
    588 F.3d 97 (2d Cir. 2009)...........................................................................................4, 7, 9

*United States v. Coombs*,
    37 U.S. 72 (1838)..................................................................................................................4

*United States v. Delis*,
    558 F.3d 177 (2d Cir. 2009)..................................................................................................3

*Weintraub v. Bd. of Educ. of City of N.Y.*,
    489 F. Supp. 2d 209 (E.D.N.Y. 2007) .................................................................................10

## Statutes & Legislative History

15 U.S.C. § 1125(c)(2)(B) ...................................................................................................3

15 U.S.C. § 1125(c)(3)(A) ............................................................................................2, 3, 4

28 U.S.C. § 1292(b) ........................................................................................................1, 2

152 Cong. Rec. E1903 .......................................................................................................3

152 Cong. Rec. S1921 .......................................................................................................3

In opposing Hyundai's motion, LVM does not dispute that, if successful, the motion would entirely terminate this action, obviating any need for a jury trial. Nor does LVM dispute that substantial grounds exist for disagreeing with most of the legal standards used by the Court in evaluating Hyundai's fair use and First Amendment arguments. Rather, LVM attempts to transform Hyundai's straightforward § 1292(b) motion into a motion for reconsideration by repeatedly claiming that Hyundai's motion is "fact-bound." However, LVM fails to identify a *single factual finding* for which Hyundai seeks review. The Court should not fall for such a transparent ruse; Hyundai presented six legal bases demonstrating that substantial grounds exist for disagreeing with the Court's interpretation of the text of the TDRA and relevant case law.

This Court should recognize, just as other courts in this Circuit have recognized,[1] that the legal standards surrounding fair use and the First Amendment are subject to differing opinions, and should therefore grant Hyundai's motion. LVM's short-sighted effort to rush to trial—when the core standards at issue are debatable and central to the outcome—would waste judicial resources and unnecessarily inconvenience jurors who will sit for a potentially meaningless trial.

I.      HYUNDAI'S MOTION PRESENTS CONTROLLING QUESTIONS OF LAW

LVM wisely does not challenge that the issues presented by Hyundai's motion are "controlling." Rather, LVM focuses exclusively on whether the issues presented are of "pure law," claiming that Hyundai seeks reconsideration of the Court's factual findings. LVM Br. at 5.

LVM's assertion is patently false: Hyundai presented *six* separate arguments of how the Court applied the incorrect *law* of fair use and the First Amendment, which necessarily would result in an incorrect *outcome* on review. Hyundai does not challenge here the Court's factual

---

[1]   LVM's suggestion that other cases granting interlocutory review on similar issues, *see* Hyundai Br. at 13, are not meaningful because they "pre-date TDRA," LVM Br. at 5 n.2, actually supports Hyundai, as the TDRA was only just passed and case law interpreting fair use under the TDRA is "limited." March 22 Order at 31.

1

findings or its application of facts to a proper legal test; it challenges the sufficiency of the legal test itself and thus presents purely legal issues in its motion.[2]

Courts routinely see through such facile charades as those presented by LVM, where a party opposing interlocutory review tries to recharacterize legal issues as "tangled" or "mixed" factual inquiries. As one court in this District recently noted in granting a § 1292(b) motion:

> These [factual] determinations … are predicated on his interpretation of two provisions of the [statute]. And because matters of statutory interpretation present questions of law, not of fact, the resolution of factual questions … will be obviated if he erred in his interpretation of the statute. Thus, because resolution of the legal question presented here would terminate the action, the question of statutory interpretation is appropriately resolved through interlocutory appeal.

*In re Enron Creditors Recovery Corp.*, No. 01-cv-16034, 2009 WL 3349471, at *6 (S.D.N.Y. Oct. 16, 2009) (footnote omitted).[3] Just as in *Enron*, Hyundai argues that the Court's legal interpretation of a statutory provision—15 U.S.C. § 1125(c)(3)(A)—was erroneous as a matter of law, and that any factual determinations by the Court predicated on that interpretation are therefore obviated. Likewise, Hyundai argues that the Court misinterpreted the relevant case law regarding the proper legal standards for Hyundai's fair use and the First Amendment arguments.

## II. SUBSTANTIAL GROUNDS EXIST FOR DISAGREEMENT WITH THE LEGAL TESTS USED BY THE COURT ON FAIR USE AND THE FIRST AMENDMENT

The second prong of § 1292(b)—whether substantial grounds exist for disagreement—is more than satisfied by Hyundai's motion. Even the Court recognized that case law discussing the fair use exception of the TDRA is "limited," March 22 Order at 31, and that the case authority upon which it relied by analogy is "distinguishable." *Id.* at 37.[4]

---

[2] LVM's position also ignores that many courts have granted motions to certify on the same issues. *See supra* n.1

[3] This applies to factual determinations predicated on erroneous interpretation of the Lanham Act. *See Lorillard Tobacco Co. v. A & E Oil, Inc.*, 503 F.3d 588, 591 (7th Cir. 2007) (when a factual determination "follows from an application of statutory language" in the Lanham Act, a challenge to the statute is treated as "a question of law").

[4] LVM argues that the lack of Circuit guidance "alone would require denial of the motion." LVM Br. at 7. This is nonsensical. Courts in this Circuit recognize that an issue of first impression does not ***require*** interlocutory

### A. Statutory Interpretation Of The TDRA

The Court made clear its position that "Hyundai's fair use argument is resolved by the text of the TDRA" as a legal matter. Order at 37. Section 1125(c)(3)(A)(ii) excludes as non-actionable dilution "*[a]ny* fair use … other than as a designation of source for the person's own goods or services, *including* use in connection with … identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner." § 1125(c)(3)(A)(ii) (emphasis added). In construing the text of the TDRA, the Court held that because the Commercial did not provide direct comment "upon the famous mark owner or the goods or services of the famous mark owner," Hyundai was not eligible for fair use protection. March 22 Order at 36. Substantial grounds exist for a differing opinion regarding the Court's interpretation of the text of the TDRA.[5] On this basis alone, interlocutory appeal is warranted.

*First*, the word "including" demonstrates that the definition of "fair use" is not limited to the examples provided in § 1125(c)(3)(A)(ii).[6] *See Samantar v. Yousuf*, 130 S. Ct. 2278, 2287 (2010) (the word "include" "signal[s] that the list that follows is meant to be illustrative rather than exhaustive").[7] Thus, substantial grounds exist for interpreting § 1125(c)(3)(A) as protecting *all* fair uses—"including" those that do not comment "upon the famous mark owner."

---

review, but it certainly *weighs strongly in favor* of such review. *See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro In Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990) (approving district court's certification where "issues are difficult and of first impression"); *In re Fosamax Prods. Liab. Litig.*, No. 06-MD-1789, 2011 WL 2566074, at *5 (S.D.N.Y. June 29, 2011).

[5] Under the law of this Circuit, "statutory interpretation … is purely a question of law." *United States v. Delis*, 558 F.3d 177, 180 (2d Cir. 2009). Thus, the Court's interpretation of § 1125(c)(3)(A) is a pure legal question.

[6] The TDRA's legislative history confirms that Congress intended the fair use exception to extend broadly and beyond the statutory examples listed. *See* 152 Cong. Rec. E1903 (Sept. 25, 2006) ("Parody, criticism, and commentary are familiar and important *examples* of fair use. *Another common example* is the appearance of trademarks when products are used in motion pictures as props, 'set dressing,' and the like." (emphases added)); 152 Cong. Rec. S1921, S1923 (daily ed. Mar. 8, 2006) (Congress was "successful in including language that definitively shelters important constitutionally protected first amendment freedoms from being caught up in the liability net").

[7] Hyundai's interpretation is consistent with courts' universal agreement that the word "including" in other sections of the TDRA is read broadly. *See* 15 U.S.C. § 1125(c)(2)(B) (in evaluating dilution by blurring, "the court may consider all relevant factors, *including* the following …." (emphasis added)). As this Court recognized in the

***Second***, the text of the TDRA provides no requirement that a plaintiff's mark be the "direct" target or centerpiece of commentary. As Hyundai pointed out in its brief, LVM was an ***indirect*** target of Hyundai's commentary, as Hyundai was commenting on iconic symbols of luxury, including LVM. Hyundai Br. at 8, 14. Thus, even if the list of examples in § 1125(c)(3)(A)(ii) is exhaustive, Hyundai indirectly "commented" on LVM, satisfying the statute. Courts have long recognized that they "are not at liberty to add … limiting words to [a] statute" where none exist. *McLean v. United States*, 566 F.3d 391, 407 (4th Cir. 2009). Substantial grounds therefore exist for disagreeing with the Court's legal insertion of a "directness" requirement into the text of the TDRA.[8]

***Third***, Hyundai's failure to use the LVM Marks as a designation of source of Hyundai's own goods or services weighs in favor of recognizing that its use of the Pattern is fair as a matter of law. Courts recognize that a use tends to be fair "when the unauthorized use of a trademark is made not for identification of product origin ***but rather*** for the expressive purposes of comedy, parody, allusion, criticism, news reporting and commentary." *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 335 (S.D.N.Y. 2000) (emphasis added). It is this quality that distinguishes the instant case from those where no fair use was found, in part because the trademarks in the latter cases ***were*** used to identify product origin. *See*, *e.g.*, *Starbucks*, 588 F.3d at 112 (mark used as designation of origin on directly competing product); *Harley-Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999) (mark used as designation of origin for directly competing service).

---

March 22 Order, this list is non-exhaustive. *See id.* at 11 ("[t]he TDRA sets forth six non-exclusive factors"); *see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105-06 (2d Cir. 2009) (list is "non-exhaustive"). Thus, the word "including" in § 1125(c)(3)(A)—the same statute—also must be interpreted as non-exhaustive.

[8]   *See also 62 Cases v. United States*, 340 U.S. 593, 596 (1951) ("[O]ur problem is to construe what Congress has written. … It is for us to ascertain—neither to add nor to subtract …."); *United States v. Coombs*, 37 U.S. 72, 80 (1838) ("where the words are general, the Court [is] not at liberty to insert limitations not called for").

LVM mischaracterizes Hyundai's argument as stating that where a mark is not used as a designation of origin, such a use is *per se* fair. LVM Br. at 7. Nowhere does Hyundai make such a suggestion. Rather, courts such as *Charles Atlas* recognize that use of a mark will tend to be fair when it is used for the purpose of commentary **rather than** for identification of product origin. Here, the Court recognized that (1) Hyundai invoked the LVM Marks for the purpose of providing general societal commentary; and (2) Hyundai did not use the Pattern to designate the source of Hyundai's own products. These findings weigh in favor of recognizing Hyundai's use of the Pattern in the Commercial as a fair use under the TDRA.

B.  **Whether Hyundai Must "Directly" Comment On LVM For Its Use To Be Fair**

Apart from the text of the TDRA, the Court ruled that, to be protected as fair use, LVM had to be the "direct" target of Hyundai's commentary—a purely legal proposition. March 22 Order at 37. However, as Hyundai explained in its brief, substantial grounds exist for disagreement with this holding—no Court has ever ruled that a defendant must be the centerpiece of commentary for the use to be fair. To the contrary, in *Harley-Davidson*—the only case upon which the Court relies for this proposition—the Second Circuit held that a parody is not a fair use where it "makes *no* comment" on the original mark. 164 F.3d at 813 (emphasis added).[9] While Hyundai's use of the Pattern was not a "direct" attack on LVM, the law under *Harley-Davidson* does not require that commentary be "direct"; rather, there must be *no* comment of any kind. Thus, substantial grounds exist to find that, under the binding law of the Second Circuit, an "indirect" attack on a mark is fair because it makes *some* comment.

LVM does not contest that an "indirect" comment on a mark is a protectable form of fair use. Rather, LVM attacks Hyundai's passing note that the reasonable perception of the audience

---

[9]   *See also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008) (use of plaintiff's mark not for purpose of commenting directly on plaintiff, but rather "to develop a cartoon-style parody of East Los Angeles," protected as fair use).

5

is a central inquiry of whether a comment has been made.  LVM Br. at 14.[10]  Notwithstanding the relatively minor nature of this point, Hyundai's position is consistent with all case law on this point—to determine fair use, courts look to the face of the use and to the reasonable perceptions of the audience.  For example, in *Bourne Co. v. Twentieth Century Fox Film Corp.*, 602 F. Supp. 2d 499, 507 (S.D.N.Y. 2009), the court recognized that to demonstrate a use was parodic, "Defendants need only demonstrate that 'a parodic character may be reasonably perceived'" (quoting *Campbell*, 510 U.S. at 582-83).  It then rejected Plaintiff's claim that the defendants must provide evidence that the audience "got" the joke, holding that even if "that joke failed, it can still support a finding of fair use if [its] 'parodic character can be reasonably perceived.'"  *Id.*  Thus, LVM's assertions that Hyundai must present "evidence that audiences 'got the joke'" or perceived the Commercial as "comment[ing] on Louis Vuitton," LVM Br. at 14, are unfounded.  Under Supreme Court law, the Court may determine from the face of the Commercial that the audience could reasonably perceive the Commercial as indirectly commenting on the LVM—a position reasonably supported by the record.

C.  **Whether Expansive Social Commentary Is Worthy Of Protection**

Hyundai's moving brief, at 9-10, 14, noted that the Court relied on a single case—*Rogers v. Koons*, 960 F.2d 301 (2d Cir. 1992)—for the proposition that, as a matter of law, courts reject as "unworthy of protection" uses of a mark in service of "expansive social criticism."  March 22 Order at 37, 50.  LVM provides no disagreement with Hyundai's assessment.[11]  Further, as

---

[10]  LVM also claims that Hyundai's argument that the central inquiry is how an audience could reasonably perceive the Commercial was "waived … by not raising it previously," LVM Br. at 14.  Hyundai raised this argument in its brief in opposition to LVM's motion for summary judgment, quoting the same authority.  *See* Hyundai Opp. Br. at 5 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 583 (1994) for proposition that "to be protected, the question is whether the challenged work '***reasonably could be perceived*** as commenting on the original or criticizing it, ***to some degree***'" (emphases added)); *see also id.* at 5 n.9 (citing *Campbell* for proposition that "parody is to be decided from the face of the use itself").

[11]  LVM tries to manufacture disagreement with this point by claiming that the Court cited *Koons* and other cases for the proposition that fair use does not protect "creativity generally."  LVM Br. at 10-11 (citing *Harley-Davidson*

Hyundai noted, *Koons* held that general social criticism is not an adequate defense to fair use in the specific circumstance of *when the audience is unaware of the underlying work*. *Koons*, 960 F.2d at 310. This is akin to "passing off" under trademark law. It is undisputed, however, that the basketball scene encourages the audience to recognize the satirical evocation of the LVM Marks. Thus, *Koons* has no relevance to this case. In addition, as Hyundai noted, other courts have recognized the value in using a mark in service of broad, social commentary. *See*, *e.g.*, *E.S.S. Entm't 2000*, 547 F.3d at 1100. Thus, substantial grounds exist for disagreement with the Court's ruling that, as a matter of law, expansive social criticism cannot be protected as fair use.

### D.     Whether The Commercial Includes Expressive Elements Protected By Fair Use

The bulk of LVM's opposition is a hodgepodge of arguments based on a self-created proposition that, "[a]ccording to Hyundai, diluting speech that includes *any* creative component is protected fair use." LVM Br. at 9. Hyundai made no such argument—it never even used the word "creative" in its brief. Rather, Hyundai properly noted that speech that includes *expressive* components receives even more protection under the First Amendment than usual. To the extent LVM discusses the subject and scope of "creativity," such arguments should be duly ignored.

Supreme Court precedent recognizes that commercial speech is "speech which does 'no more than propose a commercial transaction.'" *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (citation omitted); *see also City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 422 (1993).[12] When speech does *more* than only propose a commercial transaction, this Circuit recognizes that, to avoid "intrud[ing] on First Amendment values, we must construe the

---

and *Starbucks*). LVM's misdirection, however, is a non sequitur—the Court never cited *Koons* for such a proposition, and neither *Harley-Davidson* nor *Starbucks* address whether "expansive social commentary" is worthy of fair use protection.

[12]    Whether the Commercial incorporates expressive elements is a question of pure law. *See*, *e.g.*, *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1016 (3d Cir. 2008) ("the categorization of speech is a question of law that we must resolve through independent review"); *Jordan v. Jewel Food Stores, Inc.*, No. 10-cv-340, 2012 WL 512584, at *2 (N.D. Ill. Feb. 15, 2012) (same).

[Lanham] Act narrowly to avoid such a conflict." *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989). Thus, "hybrid" communications, "combining artistic expression and commercial promotion" that are "inextricably intertwined," benefit from heightened First Amendment protection. *Id.* Further, the Second Circuit has expressly extended this protection, to all forms of speech, including parody and commentary. *See Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Grp., Inc.*, 886 F.2d 490, 495 (2d Cir. 1989) (*Grimaldi* is "generally applicable to Lanham Act claims against works of artistic expression, a category that includes parody").[13]

As explained in Hyundai's motion, and uncontested by LVM, substantial grounds exist to interpret Hyundai's use of the Pattern in the basketball vignette as doing more than *only* proposing a commercial transaction; it also provides humorous societal commentary by focusing on a fanciful world in which well-known symbols of luxury are juxtaposed against everyday situations, to make consumers think about the current definition of "luxury" during a recession. Hyundai Br. at 12-13. Just as a movie title is a "hybrid" of "artistic expression and commercial promotion," *Grimaldi*, 875 F.2d at 998, so too is the basketball vignette. And as LVM concedes, once the vignette is recognized as having "expressive" elements, it is to be afforded heighted First Amendment protection. *See Cliffs Notes*, 886 F.2d at 494 (courts are to "constru[e] the Lanham Act 'narrowly' when First Amendment values are involved"); LVM Br. at 8, 13 (acknowledging protection afforded to expressive works).

### E.   Whether "Subtle" Commentary Is Protectable As Fair Use

Finally, LVM does not contest Hyundai's argument that, as a matter of law, substantial grounds exist for differing with the Court's holding that "subtle" social commentary is not

---

[13]   In addition, different parts of the Commercial may be subject to different standards—just as a book would not be rendered entirely "commercial" just because the last page contains an advertisement for the next book in the series, the parts of the Commercial that are expressive, such as the basketball vignette, may be afforded different levels of First Amendment protection than a subsequent call to action.

8

worthy of fair use protection.  However, other courts have protected "subtle" social commentary and criticism.  Hyundai Br. at 10-11.  At a minimum, as a matter of law, any assessment of subtlety must include consideration of context, including whether the defendant's use appears on the product and whether the products at issue compete.  Thus, substantial grounds exist for disagreeing with the Court's use of a newly devised doctrine of "subtlety," which departs from that of other courts.  For example, in *Starbucks*, the only case cited by the Court on this point, the Second Circuit found relevant that defendant's mark appeared on a directly competing product.[14]  As Hyundai noted, case law in the Second Circuit overwhelmingly recognizes that competing products are less likely to be deemed "fair" than are non-competing products, rendering this case an outlier.  Hyundai Br. at 11-12.[15]  The Court's failure to account for competition in its legal test constitutes further substantial grounds for differing opinions.

### III.   IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION

Granting Hyundai's motion will materially advance the termination of the litigation.  Hyundai's full success on its motion will wholly end this case, obviating the need for a jury trial.  The Second Circuit recognizes that the avoidance of a jury trial *per se* would materially advance termination of litigation.  *See Grand Bahama Petrol. Co. v. Asiatic Petrol. Corp.*, 550 F.2d 1320, 1321 (2d Cir. 1977) (interlocutory appeal would materially advance termination of litigation

---

[14] *See Starbucks*, 588 F.3d at 113 ("the Charbucks parody is promoted not as a satire or irreverent commentary of Starbucks but, rather, as a beacon to identify Charbucks as a coffee ***that competes*** at the same level and quality as Starbucks in producing dark-roasted coffees" (citing *Harley-Davidson*, 164 F.3d at 812-13 ("[P]arodic use is sharply limited" in circumstances where "an alleged parody of a competitor's mark [is used] to sell ***a competing product***."); *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 260-61 (4th Cir. 2007) (permitting parodic use where the parody marketed its products to a significantly ***different class of consumers*** than the famous mark")) (emphases added)).

[15] LVM mischaracterizes Hyundai's position as an argument that only competing products may dilute.  LVM Br. at 11.  As Hyundai stated in its brief, while competition is not relevant to finding dilution by blurring, it is relevant to assessing fair use.  *See Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507-08 (2d Cir. 1996) ("Henson's merchandise will not be in direct competition with that of Hormel.  This is an important, even if not determinative, factor."); *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 45 (2d Cir. 1994) (granting "more leeway … in the context of satiric expression and humorous ads for noncompeting products").

because "the action would terminate at once without the necessity for trial by jury"). This holds true for summary judgment orders where all that remains is trial. *See*, *e.g.*, *Herbert v. Lando*, No. 74-CV-434, 1985 WL 463, at *2 (S.D.N.Y. Mar. 26, 1985).

LVM's response is merely that "trial is imminent." LVM Br. at 15. Notwithstanding that the Court has yet to set a trial date, LVM does not attempt to explain how it could be efficient to conduct an unnecessary, meaningless jury trial. As one New York court explained in certifying an order that denied a party the opportunity to present First Amendment arguments at trial:

> If the action were to proceed to trial before [movant] could appeal the Court's ruling, he would be precluded from presenting the bulk of his First Amendment retaliation claim to the jury. If the Second Circuit were to subsequently conclude on appeal that [movant]'s speech was protected, the case would need to be retried, resulting in a substantial waste of resources ….

*Weintraub v. Bd. of Educ. of City of N.Y.*, 489 F. Supp. 2d 209, 222 (E.D.N.Y. 2007).[16]

Finally, LVM posits that the Court should consider whether Hyundai is likely to succeed on appeal. LVM Br. at 15. LVM, however, confuses the second prong (substantial grounds for a difference of opinion) with the third prong (advancing ultimate termination of the litigation).[17] For the purposes the third prong, the Court is to assume Hyundai's success. *See SEC v. Syn. Food Servs. Int'l, Inc.*, No. 04-CV-1303, 2010 WL 5173267, at *1 (E.D.N.Y. Dec. 14, 2010).[18]

## CONCLUSION

This Court should certify the March 22 Order for interlocutory appeal under § 1292(b).

---

[16] LVM also argues that the "better course would be to try the case and to have Hyundai's fact-intensive appellate issue considered in the context of a full evidentiary record." LVM Br. at 15. This makes no sense—the Court has ruled that Hyundai's use was not fair as a matter of law, so the evidentiary record on this issue is currently complete.

[17] The case cited by LVM, *In re Del-Val Fin. Corp. Secs. Litig.*, 874 F. Supp. 81, 84 (S.D.N.Y. 1995), found that even if the movant succeeded on appeal, the Second Circuit likely would not order retrial as a remedy. Thus, the "likelihood" *Del-Val* referred to was not the likelihood of success on appeal, but of a particular remedy on remand.

[18] Even if the case is remanded with revised legal standards, interlocutory review is warranted to avoid a second trial. *See In re Indep. Serv. Orgs. Antitrust Litig.*, No. CIV. A. MDL-1021, 1997 WL 450028, at *4 (D. Kan. July 17, 1997) ("an immediate appeal of the [summary judgment order] likely would materially advance the ultimate termination of this litigation. An immediate appeal would resolve issues that will be critical to evidentiary rulings and jury instructions at trial. A delay in the appeal of the court's rulings could require re-trying this matter.").

DATED: New York, New York
April 16, 2012

                                        QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP

                                        By: _____
                                            Robert L. Raskopf
                                            Julie B. Shapiro
                                            Todd Anten

                                        51 Madison Avenue, 22nd Floor
                                        New York, New York 10010-1601
                                        Telephone: (212) 849-7000
                                        Fax: (212) 849-7100
                                        robertraskopf@quinnemanuel.com
                                        julieshapiro@quinnemanuel.com
                                        toddanten@quinnemanuel.com

                                        *Attorneys for Defendant Hyundai*
                                        *Motor America*